IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS FARIAS ARROYO (aka Luis Farias),<br><br>                 Plaintiff,<br><br>    v.<br><br>California Department of Justice, Bureau of Narcotics Enforcement Special Agent Supervisor and Placer Special Investigations Unit Commander JEFF CAMERON; Placer County Deputy Sheriff KEN ADDISON; Drug Enforcement Administration Special Agent OMAR BERSAMINA; and the UNITED STATES OF AMERICA,<br><br>                 Defendants. | 2:08-cv-01493-GEB-KJM<br><br><u>ORDER GRANTING DEFENDANT OMAR BERSAMINA AND THE UNITED STATES OF AMERICA'S MOTIONS FOR SUMMARY JUDGMENT</u> |

        Defendant Omar Bersamina ("Bersamina"), a federal Drug Enforcement Administration ("DEA") agent, moves for summary judgment on Plaintiff's Fourth Amendment excessive force claim, contending he did not seize Plaintiff and therefore was never in a position to use force on Plaintiff. Defendant United States of America also moves for summary judgment on Plaintiff's negligence claim. Plaintiff clarified at the hearing on the motions that his negligence claim against the United States is based solely on Plaintiff's excessive force Fourth Amendment claim alleged against Bersamina. Bersamina is the only remaining federal defendant in this action.

        Plaintiff alleges that during the execution of a federal search warrant at 3438 Lone Ridge in Antelope California," ("3438 Lone

1 Ridge"), a law enforcement officer subjected him to excessive force,
2 in violation of his Fourth Amendment right. (First Amended Complaint
3 ("FAC") ¶ 3).  Plaintiff alleges that while he was being detained, and
4 after he was handcuffed, that the officer violently threw him to the
5 ground, "causing [him to suffer] serious injuries, including a broken
6 leg," which required surgery.  (Id. ¶¶ 22-24.)  "Plaintiff was not
7 arrested or charged with any crime."  (Id. ¶ 24.)

## LEGAL STANDARD

When deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party, and "[a]ll reasonable inferences must be drawn in the nonmoving party's favor . . . " Triton Energy Corp. v. Square D Co.,68 F.3d 1216, 1220(9th Cir. 1995).

## DISCUSSION

On June 29, 2006," at approximately 9:45 p.m., various agents from the DEA, FBI, and the California Bureau of Narcotic Enforcement/Placer County Special Investigations Unit ("SUI") "executed a [federal] search warrant at 3438 Lone Ridge" in connection with a previous arrest for the sale of nine pounds of methamphetamine. (Statement of Undisputed Facts ("SUF") ¶¶ 1-3.) Plaintiff was visiting Pablo Vital Garnica ("Garnica") for his birthday on the premises of 3438 Lone Ridge when the search warrant was executed. (Id. ¶¶ 3-4, 14.)

Plaintiff sat down next to Garnica and began drinking a beer. (Id. ¶ 5.)  Plaintiff was seated "on the far left side of the driveway with Garnica to his right."  (Id. ¶ 15.) "The garage is part of the house and sits in front of the house facing the driveway and the street."  (Id. ¶ 38.)  Garnica declares he and Plaintiff were

2

"just outside the entrance of the garage;" Garnica "was seated to the Plaintiff's right and with his back facing the street." (Id. ¶¶ 7-8, Bersamina Ex. E, Garnica Decl. ¶ 5.)  Another individual who "Plaintiff did not know was sitting 'at a distance' from Plaintiff." (Id. ¶ 6; Bersamina Ex. D, First Arroyo Depo. 21:15-22:25).  That individual was later identified as Francisco Alejandro Romero ("Romero"). (Id. ¶ 9.)

Plaintiff testified he "visit[ed] with Mr. Garnica" for "two minutes" before a van arrived, out of which came "five" police officers. (Id. ¶ 10; Bersamina's Ex. D, First Arroyo Depo. at 24:3-5, 26:7-18).  Plaintiff later testified that "about twenty minutes" after his arrival at 3438 Lone Ridge "six to seven police officers got out of the van." (Id. ¶ 16; Pl's Arroyo Fed. Dep. DT 88:19-89:7; Bersamina Ex. F, Second Arroyo Dep. at 46:11-16.) Plaintiff testified that "after four seconds of the[] [officers'] arrival, one of the officers detained him." (Id. ¶ 11; Bersamina's Ex. D, First Arroyo Depo. at 30:16.)  Plaintiff testified that it was a male officer who "got out of the van" and approached him. (Id. ¶ 17; Bersamina, Ex. F, Second Arroyo Depo. 46:17-22; 47:5-7; 48:2-5; 90:24-91:2).  Bersamina testified that he "did not ride with some of the other agents in the SUI raid van to the search at 3438 Lone Ridge . . . on June 29, 2006." (Id. ¶ 27.)  "Multiple vehicles, including a raid van, arrived contemporaneously to serve the warrant." (Plaintiff's Statement of Disputed Facts ("PSDF") ¶ 11.)

Plaintiff testified "that the officer went behind him, cuffed his hands, picked him up to a standing position by grabbing his shirt collar and his cuffed hands." (SUF ¶ 18.)  Plaintiff testified after he "was handcuffed," he was "lifted from his chair by his shirt

1  collar and his hands to standing position, and then pushed in the
2  middle of his back to the concrete." (Id. ¶ 12.)  The officer "pushed
3  [Plaintiff's] back[,]" causing Plaintiff to fall "forward" to the
4  ground and to sustain injuries. (Id. ¶¶ 19, 20; Second Arroyo Depo.
5  49:13-19.)

6  Plaintiff gave deposition testimony that a single individual
7  male officer threw him to the ground, that he "[could] not identify"
8  the person or his skin, height, hair, facial hair, that the person
9  "had a vest on" with ["b]ig letters" and "was kind of shorter than"
10 "and stronger than" Plaintiff. (Id. ¶ 13; Bersamina, Ex. D, First
11 Arroyo Depo. at 30:17-31:25; 32:21-33:5; 41:24-42:14.)  In a later
12 deposition, Plaintiff could not identify anything about the person who
13 detained him, except that when Plaintiff "was put to the ground,"
14 Plaintiff saw the individual was wearing a vest. (Id. ¶ 22; Bersamina,
15 Ex. F, Second Arroyo Depo., 54:16-57:1; 57:12-59:1).  "The officers
16 serving the warrant all arrived wearing raid gear including vests and
17 helmets."  (PSDF ¶ 12.)

18 Plaintiff estimated in his later deposition that the
19 person who threw him weighed "180 pounds more or less." (Pl's Response
20 to SUF ¶ 13; Pl's Arroyo Fed. Depo. 52:23-54:16; SUF ¶ 22.)  Bersamina
21 testified that at the time of the June 29, 2006, incident he was
22 probably 5 foot, 5 inches tall and weighed 180 pounds. (Pl's Response
23 to SUF ¶ 13; Pl's Bersamina Depo. 40:1-4.)  "Bersamina is skilled in
24 multiple martial arts disciplines including Jiu-Jitsu, Korean karate,
25 Wing Chun Kung Fu, Jing Quan DO and Shoot wrestling." (PSDF ¶ 18.)
26 "Bersamina's martial arts skills have facilitated his taking taller
27 subjects to the ground." (Id. ¶ 19.)  Bersamina "is of a similar
28

1 | height, weight, and strength as the person who threw [P]laintiff to
2 | the ground causing his injuries." (Id. ¶ 24.)
3 |      Bersamina counters Plaintiff's evidence with Plaintiff's
4 | deposition testimony in which Plaintiff admits that after Plaintiff
5 | "personally attended the deposition of the SIU members," Jeff Cameron
6 | ("Cameron") and Ken Addison ("Addison"), he still could not "say one
7 | way or another whether or not it was any of those officers who put
8 | [him] on the ground."  (SUF ¶ 23; Bersamina, Ex. F, Second Arroyo
9 | Depo. 59:6-60:10.)  Further, when Plaintiff was given photographs of
10 | SIU team members . . . Addison, David Brose ("Brose"), Brandon Olivera
11 | ("Olivera"), Ben Machado ("Machado"), and Scott Bryan ("Bryan") taken
12 | right after execution of the federal search warrant on June 29, 2006,
13 | [Plaintiff] could not positively identify any of those shown in the
14 | photographs as the alleged wrongdoer. (Id. ¶ 24.)
15 |      Plaintiff replies in his declaration dated March 5,
16 | 2010, that after having seen Cameron and Addison for the first time at
17 | their depositions on April 20, 2009, and after having seen Bersamina
18 | for the first time at his deposition on February 4, 2010, Plaintiff
19 | ***"believe[s]"*** these individuals "may have been the" one "who threw
20 | [him] down and caused [his] injury[,] but [he is] not sure." (Pl's
21 | Response to SUF ¶ 23; Pl's Arroyo Decl., ¶¶ 6-8; emphasis added.)
22 |      What Plaintiff "believes" has not been shown to be "based on
23 | personal knowledge," but rather reflects a the type of "information
24 | and belief" that does not constitute a specific identification of
25 | Bersamina as the person responsible for the seizure about which
26 | Plaintiff complains. Columbia Pictures Indus., Inc. v. Prof'l Real
27 | Estate Investors, Inc., 944 F.2d 1525, 1529 (9th Cir. 1991)(internal
28 | reference omitted).

Bersamina presents evidence supporting his argument that he did not seize Plaintiff. "[Special Agent ("S/A")] Katie Dorais testified in her deposition that [Plaintiff] was detained on the left side of the driveway and immediately when the search team arrived." (SUF ¶ 53; Bersamina Ex. H, Dorais Depo. 55:9-20, 59:23-60:8, 105:22-106:7.) It is undisputed that "Plaintiff was laying on the far left side of the driveway along and parallel to the driveway and perpendicular to the street." (Id. ¶ 26). Another individual detained by the agents was on the far right side of that garage. (Id. ¶ 25.) Bersamina argues that "immediately [up]on the search team's arrival at 3438 Lone Ridge . . . [he] detained . . . Romero;" Romero was the individual on the right side of the garage at 3438 Lone Ridge. (Id. ¶¶ 28, 29.) Bersamina relies on the following averments in DEA S/A Alicia Ramirez ("Ramirez")'s declaration as support for his argument:

> I was one of the last officers out of the SIU raid van. As I approached the garage area, I saw Special Agent Bersamina with an individual who was laying on the drive way just outside of the garage area at 3438 Lone Ridge Court. ***He was lying across the driveway and parallel to the street, and was on the right side of the driveway from the direction of facing the garage from the street. I later learned this individual was named Francisco Alejandro Romero.***
>
> I assisted Special Agent Bersamina as he placed handcuffs on Mr. Romero while Mr. Romero was lying on the ground. ***This occurred within seconds of the search team's arrival at 3438 Lone Ridge Court.***

(Id. ¶¶ 28, 29; Bersamina Ex. G, Ramirez Suppl. Decl. ¶¶ 4-5)(emphasis added). Bersamina presents evidence showing that Romero's detention occurred at the same time when Plaintiff had been or was being detained on the left side of the driveway/garage area, and which also

6

shows Plaintiff and Romero's respective locations from the perspective of person looking at them from a position on the street, facing the garage; "S/A Katie Dorais was on the left side of the garage area." (SUF ¶ 31.) Bersamina relies on following Ramirez's testimony as support for his argument:

> At the time I assisted Special Agent Bersamina in handcuffing Mr. Romero, ***I was aware there were two other individuals on the left side of the garage/driveway area.*** I was generally aware that those individuals were being or had already been detained as I approached and assisted Special Agent Bersamina in handcuffing Mr. Romero. I did not see who detained the other individuals. ***I do recall that Special Agent Katie Dorais was on the left side of the garage area. I later learned that individual on the far left side of the garage area was [Plaintiff]. I recall seeing [Plaintiff] lying parallel to the driveway and perpendicular to the street.***

(Id.; Bersamina Ex. G, Ramirez Suppl. Decl. ¶ 6)(emphasis added.)

Plaintiff counters that Bersamina testified before that he had "no recollection" of detaining anyone at 3438 Lone Ridge. (Pl's Response to SUF ¶¶ 28, 29; Bersamina Depo. 30:18-20; 48:13-18; 56:1-10.) Plaintiff also presents Ramirez's deposition testimony, in which Ramirez testified when "she got out of the van[,]" all of the detained men were "on the ground" and "handcuffed at that point." (Pl's Response to SUF ¶ 28; Ramirez Depo. 15:17-23.) Plaintiff also references Ramirez's original declaration, in which Ramirez declared "[she] did not participate in or witness [Plaintiff] being physically detained to the ground on or about June 29, 2006." (Pl's Response to SUF ¶ 31) (referencing Bersamina, Ex. I, Ramirez Decl. ¶ 4.) Plaintiff argues this evidence contradicts the above portion of Ramirez's declaration in which she declares she handcuffed Romero with Bersamina, and Ramirez's assertion that detainment of Romero

7

occurred at the same time as Plaintiff's detainment.  (Pl's Response to SUF ¶¶ 28, 29, 31.)

Bersamina concedes that "it is disputed whether S/A Ramirez assisted in placing handcuffs on Mr. Romero or whether he was already cuffed, and withdraws this factual assertion." (Bersamina's Response to Pl's SUF ¶ 30.)  However, Bersamina also rejoins that the time period between the agents' arrival at 3438 Lone Ridge and Plaintiff's seizure elapsed very quickly. (Id. ¶¶ 28, 29, 31.)  Bersamina cites Plaintiff's testimony, in which Plaintiff testified he was detained immediately when the search team arrived. (Id. ¶¶ 28, 29, 31) (referencing SUF ¶¶ 11, 21).  Bersamina also cites the following portion of Ramirez's deposition testimony:

> [Ramirez] ran past [Plaintiff] after [she] realized and saw that he was already down. That there was – we tried to do at least two officers to one defendant – that [Bersamina] was by himself. So I ran past him and ran over to the – around the vehicle and to assist [Bersamina.]
>
> [ . . . ]
>
> [Plaintiff] was obviously the first subject that I saw, and I ran past him. There was already a defendant kind of in the middle. ***And the defendant I went to was farthest away on the other side of the driveway from [Plaintiff]. And that is where I ended up. . . . And it was Omar Bersamina that I saw handcuffing this individual by himself so I went to assist him.***
>
> [ . . . ]
>
> ***[T]here was only one officer on Mr. Romero and that was Special Agent Bersamina. So I ran over to assist him [and] recall[ed] seeing Katie [Dorais] and another – an SIU officer with [Plaintiff].***

(Id. ¶ 31)(Ramirez Depo. at 16:19-24; 18:10-14; 19:2-4; 34:1-14)(emphasis added.)  Further, Bersamina provides an additional declaration from Ramirez, concerning what she saw after she reviewed a

1  video of 3438 Lone Ridge subsequent to the execution of the federal
2  search warrant.  Ramirez declares the video identifies Romero "on the
3  far right side of the driveway from the direction of facing the garage
4  from the street," as the individual Bersamina detained.  (Id. ¶ 31,
5  Bersamina Ex. R Ramirez Second Suppl. Decl. ¶ 3.)

6        "S/A . . . Klingman shot [a] video on June 29, 2006 . . .
7  of the front exterior, including driveway, and the interior of the
8  house at 3438 Lone Ridge . . . after the individuals at the house had
9  been detained and the house was cleared."  (SUF ¶ 50.)  The Video
10 "shows [Plaintiff] on the far left of the driveway with his head
11 facing the garage and feet facing the street.  Romero is shown on the
12 far right of the driveway, lying perpendicular to the driveway and
13 parallel to the street."  (Id. ¶ 51.)  The "Video [also] shows S/A
14 Bersamina standing near Romero on the right side of the driveway."
15 (Id. ¶ 52.)

16       Bersamina argues he "did not participate in Plaintiff being
17 detained to the ground," and supports this argument with Ramirez's
18 averment that she "assisted . . . . Bersamina in detaining a suspect
19 other than [Plaintiff] at 3438 Lone Ridge . . . . during execution of
20 a search warrant . . . on or about June 29, 2006."  (SUF ¶ 32;
21 Bersamina, Ex. I, Suppl. Ramirez Decl. ¶ 3.)  Bersamina also provides
22 a declaration from Ramirez, in which she declares she "did not see
23 . . . Bersamina use any force on or come into physical contact with
24 . . . [Plaintiff] at any time during the search on the evening of
25 June 29, 2006."  (SUF ¶ 32; Bersamina, Ex. G, Ramirez Suppl. Decl. ¶
26 9.)

27       Plaintiff counters again with Ramirez' deposition testimony,
28 in which Ramirez testifies when "she got out of the van" all of the

9

1 detained men were "on the ground" and "handcuffed at that point,"
2 which Plaintiff argues indicates his seizure could have happened
3 either before or after the van's arrival. (Pl's Response to SUF ¶ 32;
4 Ramirez Depo. 15:17-23.)

5 Bersamina also provides testimony from "S/A Ramirez [who]
6 recalls that at some point after S/A Bersamina detained Romero, he
7 attempted to search [Romero]" and "Romero fell from S/A Bersamina's
8 grasp." (Id. ¶ 49, Bersamina's Ex. G, Ramirez Suppl. Decl. ¶ 7.)
9 Bersamina cites the following portion Ramirez's declaration on this
10 point:

> At some point after Mr. Romero and the other individuals were detained, [she] saw Special Agent Bersamina attempt to search Mr. Romero, who was lying face down on the drive way. **In order to turn Mr. Romero over to search his front pants pockets, Special Agent Bersamina attempted to lift and turn Mr. Romero by, in part, grabbing Mr. Romero's pants and belt. It appeared that Mr. Romero slipped from Special Agent Bersamina's grasp and fell to the ground.** Mr. Romero did not appear to be injured after he was searched.

17 (Id.)(emphasis added.)

18 "SIU agent Defendant Dave Brose testified that he was part
19 of the SIU search team that arrived at the house in the SIU raid van."
20 (SUF ¶ 35.) "SUI agent Brose testified that after the search team had
21 searched the house, [he] left the house in order to drop off his raid
22 gear." (Id. ¶ 36.) Brose testified that from the perspective of being
23 "'outside of the garage,' 'facing the house,' he saw S/A Dorais with
24 two individuals on the left side of the garage area, and" "on the
25 right side of the garage on the floor was an individual face down with
26 a DEA agent" who was "lying across the garage area where [Brose]
27 actually had to step over his feet." (Id. ¶¶ 37, 39 Bersamina, Ex. L,
28 Brose Depo. at 34:16-25; 36:22-25.)

Plaintiff counters that this testimony does not show that the DEA agent Brose saw was Bersamina; however, Bersamina rejoins that Brose also testified that when he "drop[ped] his gear off," he "pass[ed] by the individual laying prone on the floor that [Bersamina] had control of . . . ." (Bersamina's Response to SUF ¶¶ 37, 39-40, Bersamina, Ex. L, Brose Depo. at 41:21-42:5) Brose testified that he saw Bersamina "pick[] . . . up [that individual] by the belt and slam [him] . . . into the ground." (SUF ¶ 40, Bersamina, Ex. L, Brose Depo. at 41:21-42:5.)

Additional testimony supports Bersamina's argument that he seized Romero.  "SUI agent . . . Bryan testified that when he exited the garage after having entered the house, he saw Bersamina searching a person 'in an aggressive manner.'" (Id. ¶ 42.)  Bryan testified that "it looked a 'little rough[,]' but was 'not excessive in any way that I needed to report it to my supervisor.'" (Id. ¶ 43.) Bryan also "testified that he could not identify any of the individuals detained at the search, including Plaintiff." (Id. ¶ 44.)  Further, "SUI agent . . . Olivera testified that he saw Bersamina searching a face down suspect on the driveway several minutes after the house was secured." (Id. ¶ 48.)

Addison testified that he "saw [Bersamina] patting down a subject that was handcuffed on the ground and flipped him over." (Id. ¶ 45; Bersamina, Ex. N, Ken Addison Depo. 24:20-25.)  Addison testified that "Bersamina's move was a 'tad bit aggressive but just that -- nothing that warranted any kind of action. [Addison] just thought -- it wasn't anything [he] would have done.  It just seemed a little aggressive." (Id. ¶ 46; Bersamina, Ex. N, Ken Addison Depo. 26:24-27:4.)  Addison also testified that he could not "recall if

1  [Plaintiff was who he] dealt with or if it was who [Bersamina] dealt
2  with." (Id. ¶ 47; Bersamina, Ex. N, Ken Addison Depo. 28:22-29:4.)
3          Plaintiff argues that Bersamina does not support his denial
4  of participation in Plaintiff's injury with personal knowledge. (Pl's
5  Response to SUF ¶ 32.) Further, Plaintiff counters that Bersamina
6  testified that he had no recollection of detaining any one at the
7  scene, or anything concerning execution of the warrant. (Pl's
8  Response to SUF ¶ 49; Pl's Bersamina Depo. 30:18-20, 48:13-18;
9  56:1-10.)
10         Bersamina argues "the record shows without dispute
11 [he] did not place Plaintiff on the ground" and that "Bersamina
12 detained Francisco Romero – not Plaintiff - on the right side of the
13 garage area when the search team arrived." (Mot. 7:13-15.) Bersamina
14 also argues that he "did not participate in Plaintiff being placed on
15 the ground." (Id. 7:17.)
16         Further, Bersamina argues "Plaintiff was on the left side of
17 the driveway sitting closest to his friend Garnica, and was detained
18 on the left side." (Id. 7:21-22.) Bersamina asserts that evidence
19 places Bersamina on the right side of the garage detaining Romero,
20 when Plaintiff was being detained. (Id. ¶ 9:1-13.)
21         Plaintiff counters, arguing that "Bersamina's motion does
22 not cite either a single excerpt from his own deposition or any
23 declaration by him, or even his previously submitted (but since
24 repudiated) declaration" and there is "conflicting evidence . . . as
25 to who caused plaintiff's injuries." (Opp'n 2:18-23.) Plaintiff also
26 argues that "[g]iven the elimination of parties dismissed as
27 defendants based upon the evidence as it has developed and the
28 vehement denial of defendant Cameron, to the extent someone who

participated in the execution of the search warrant injured plaintiff, the likelihood is now greater that the person is . . . Bersamina." (Opp'n 10:13-17.) Plaintiff also argues he now "believes Bersamina may be the person who threw him to the ground although he is not positive." (Id. 5:4-6.) Further, Plaintiff argues that "Bersamina matches the general physical description and characteristics given by plaintiff, including Bersamina's strength and martial arts training that would have allowed him to throw plaintiff to the pavement as described." (Id. 5:1-4.)

Plaintiff argues because his difficulty in identifying the officer who seized him is a result of Defendants "literally hiding behind the helmets and uniforms they wore when executing the search warrant,""[t]his case is therefore similar to the Ninth Circuit case of Dubner v. City and County of San Francisco, 266 F.3d 959 (2001), an action involving an alleged Fourth Amendment violation and a Plaintiff "unable to identify the officers responsible for the violation." (Id. 7:8-17, 8:5-8.) In Dubner the Ninth Circuit shifted the burden to the defendants on an unlawful arrest issue after the Plaintiff presented a prima facie on the unconstitutionality of his arrest.

Bersamina rejoins that Dubner is inapplicable to this case and is limited to cases involving claims for "warrantless arrest," citing Taylor v. Brockenbrough, No. CIV.A. 98-6419, 2001 WL 1632146, *2 n.4 (E.D. Pa. Dec. 20, 2001), as support for this argument. (Reply 8:21-22, 9:6-7.)

> The Ninth Circuit's decision in Dubner was influenced by the fact that it was the police department's procedure to name the first officer on the scene as the arresting officer, even if that officer did not in fact make the arrest. The Ninth Circuit found this failure to correctly identify the arresting officers to be a deliberate attempt

13

> to thwart false arrest claims by allowing police officers to "hide behind a shield of anonymity and force plaintiffs to provide evidence that they cannot possibly acquire." In order to prevent this injustice, the Ninth Circuit shifted the burden of producing evidence of probable cause to the defendants, allowing the plaintiff's case to proceed even though she had not identified the officers responsible for her allegedly unlawful arrest. Unlike Dubner, the present case does not involve a police department policy or procedure that would allow police officers who unlawfully beat or detain civilians to remain anonymous. As a result, the Ninth Circuit's opinion in Dubner does not inform this court's decision.

Taylor, 2001 WL 1632146, at *2, n.4 (citations omitted).

Since Plaintiff has not controverted Bersamina's evidence showing that Bersamina seized Romero and that another officer or officers seized Plaintiff, Bersamina's summary judgment motion on Plaintiff's excessive force claim against him is granted.

Lastly, since Bersamina prevails on his motion, the United States' motion for summary judgment on Plaintiff's negligence claim, which is premised on Plaintiff's excessive force claim against Bersamina, is also granted.

Dated:  May 3, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge